# In the United States Court of Federal Claims

No. 19-414V
Filed: December 9, 2021
Reissued for Publication: January 31, 2022[1]

```
* * * * * * * * * * * * * * * * * *
                                   *
JOHNNY MATTHEWS,                   *
                                   *
            Petitioner,            *
                                   *
v.                                 *
                                   *
SECRETARY OF HEALTH AND            *
HUMAN SERVICES,                    *
                                   *
            Respondent.            *
                                   *
* * * * * * * * * * * * * * * * * *
```

**Renée J. Gentry**, Vaccine Injury Clinic, George Washington University Law School, Washington, DC, for petitioner.

**Ryan D. Pyles**, Senior Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. With him were **Heather L. Pearlman**, Deputy Director, Torts Branch, Civil Division, **C. Salvatore D'Alessio**, Acting Director, Torts Branch, Civil Division, and **Brian M. Boynton**, Acting Assistant Attorney General, Civil Division.

## O P I N I O N

**HORN, J.**

On March 19, 2019, petitioner Johnny Matthews filed a pro se petition in this court under the National Childhood Vaccine Injury Act 42 U.S.C. § 300aa-10 (2018). Petitioner claimed he "received the Influenza Vaccine on or around November 10, 2013, at the emergency room, Carolinas Hospital System in Florence, South Carolina," and that "[his] GBS [Guillain-Barré Syndrome] was caused-in-fact by the Influenza Vaccine administered on November 10, 2013." As a result, "[p]etitioner respectfully seeks an award in accordance with the [National Childhood Vaccine Injury] Act, including but not limited to an award of pain and suffering, out-of-pocket medical expenses, and costs."

---

[1] This Opinion was issued under seal on December 9, 2021. The parties did not propose any redactions to the December 9, 2021 Opinion, and the court, therefore, issues the Opinion without redactions for public distribution.

Initially, petitioner attempted to proceed in forma pauperis. He subsequently obtained counsel. From October 14, 2019 to September 29, 2020, petitioner filed numerous medical records pertaining to his hospital visits from 2013 and 2014. On February 23, 2021, petitioner moved for a finding of fact to prove that "he received an influenza vaccination on or about November 10, 2013."[2] Respondent opposed the motion and cross-moved for dismissal, arguing that petitioner had failed to produce a record of vaccine administration.

On August 19, 2021, after reviewing the extensive medical records that petitioner submitted, Special Master Horner dismissed the petition stating there was "not preponderant evidence that petitioner received a vaccination covered by this program." Matthews v. Sec'y of Health & Human Servs., No 19-414V, 2021 WL 4190265, at *1 (Fed. Cl. Aug. 19, 2021). On September 17, 2021, after the public version of the Special Master's decision was released, petitioner filed a motion for review in this court, claiming that "[t]he Special Master abused his discretion by characterizing Petitioner's medical records in such a way as to give them dispositive weight against petitioner as to the issue of vaccination." The motion for review was assigned to the undersigned.

In relevant part, the facts in the record depict the following: On October 13, 2013, petitioner presented himself to the Carolinas Hospital System emergency department in Florence, South Carolina for chronic lower back pain. Petitioner was diagnosed with acute lumbar strain. A screening assessment from this visit indicated "no" under the prompt "flu vaccine this season." When petitioner returned to the Carolinas Hospital System emergency department on October 28, 2013, for scabies, his screening assessment listed the same response of "no" to the prompt "flu vaccine this season." Less than two weeks later, on November 10, 2013, petitioner returned to the Carolinas Hospital System emergency department for a swollen painful toe assessed as a right-toe contusion. This time, the prompt "flu vaccine this season" on the screening assessment elicited a printed "yes," without any additional details such as when or where the vaccine was administered. The billing statement for services provided during this visit did not include a charge for an influenza vaccination.

On November 13, 2013, petitioner presented to the McLeod Regional Medical Center emergency department in Florence, South Carolina for cough, congestion, and pain on his right side. A laboratory report dated November 14, 2013, showed petitioner tested negative for both the Influenza A and B antigen tests. A billing statement from the November 13, 2013, visit to the McLeod Regional Medical Center showed the petitioner was billed for antigen tests, but not for an influenza vaccination.

On November 18, 2013, petitioner returned to the Carolinas Hospital System emergency department for a severe right forearm laceration sustained from a knife attack. Petitioner was admitted for surgery to repair his forearm. A screening assessment from

---

[2] Petitioner states he received the influenza vaccination at issue "on or around November 10, 2013" in his petition. In his motion for finding of fact, however, petitioner states he received the influenza vaccination "on or about November 10, 2013."

this visit listed "yes" as the response to the prompt "flu vaccine this season," again with no elaboration of when or where an influenza vaccine had been administered. The billing statement from this stay reflected no billing for an influenza vaccination.

Petitioner alleges that a nurse administered an influenza vaccination in the emergency room at Carolinas Hospital System emergency department during his hospitalization starting on November 18, 2013. Petitioner claims a nurse administered the influenza vaccination in his left arm while another nurse sewed up his right arm after the surgery to repair his laceration. He claims the influenza vaccination occurred in the Carolinas Hospital System emergency department. This is inconsistent with the report from petitioner's surgery, which states that the surgery, along with the subsequent stapling, splintering, dressing, and wrapping of his wound, were performed in an operating room while he was under anesthesia and intubated. The report further states that, after his surgery, petitioner was transferred to a Carolinas Hospital System post-anesthesia care unit, not to the emergency department.

Petitioner was discharged from the Carolinas Hospital System on November 21, 2013. Petitioner's Patient Discharge Summary had "No" printed next to the prompt "Influenza Admin." A form in petitioner's medical records signed by a nurse and dated November 21, 2013, marked that petitioner refused vaccination. The form also included an unchecked box next to the prompt "Previously immunized this flu season." The billing statement from petitioner's November 18-21, 2013, hospital stay did not include a charge for an influenza vaccination.

On November 25, 2013, petitioner returned to the Carolinas Hospital System emergency department for moderate numbness and tingling in his hands and legs. He was assessed with hyperventilation syndrome. The screening assessment from this visit indicated "no" in response to the prompt "flu vaccine this season." As with the previous visits to the Carolinas Hospital System, the billing statement for services during this visit reflected no charge for a vaccination. On November 27, 2013, petitioner returned to the McLeod Regional Medical Center emergency department for anxiety, chest pain, shortness of breath, and numbness. His immunizations were noted as "current" without any specification. Petitioner was diagnosed with numbness of the arms and legs, after which he left the hospital against medical advice.

On November 28, 2013, petitioner returned to the Carolinas Hospital System emergency department, at which time he presented with difficulty standing and walking. Petitioner was assessed with neuropathy, after which he agreed to follow up with a neurologist. Once again, the screening prompt "flu vaccine this season" elicited a "no." Similar to the other billing statements, the billing statement from this visit showed no charge for a vaccination. On November 29, 2013, petitioner returned to the McLeod Regional Medical Center for what was diagnosed as GBS. Upon admission, medical records again indicated he had not received an influenza vaccine for the 2013-2014 flu season. An order was entered to administer an influenza vaccination at discharge. Petitioner then consulted with a neurologist on December 6, 2013. While making no

reference to any vaccination history, the neurologist diagnosed petitioner with probable GBS, which was later confirmed.

A notation in petitioner's medical records dated December 12, 2013, instructed a nurse at McLeod Regional Medical Center to call the Carolinas Hospital System to confirm whether petitioner had received an influenza shot during his prior admission. This notation was followed by the word "done," with no date shown. Clinical notes from that same date state a pharmacist at the Carolinas Hospital System confirmed "there are no records of pt [patient] receiving the vaccination."

On December 21, 2013, a notation in the petitioner's medical record from the McLeod Regional Medical Center indicated the influenza vaccine should be added to petitioner's list of allergies. This notation was followed by another stating petitioner had a "recent shot followed by Guillain-Barre Syndrome." The basis for these notations is unknown as the clinic notes from December 21, 2013, did not indicate who or which record provided this information. Following the notations regarding an allergy to the Influenza vaccine, petitioner's medical record was updated to include the vaccine among his allergies. The order for vaccination issued on November 29, 2013, was then discontinued.

On January 7, 2014, a consultation for pain management indicated no known drug allergies. Petitioner's medical records further indicated that he "is now no longer a candidate for the flu shot." From this consultation on, petitioner reported to other health providers that his GBS was caused by an influenza vaccination and the vaccine continued to be listed as an allergy. On January 18, 2014, before his discharge from the McLeod Regional Medical Center, petitioner was recorded as having reported to a nurse that he was previously vaccinated. On January 19, 2014, petitioner's medical records reflected a severe allergy to the influenza vaccine. On February 24, 2014, petitioner's medical record indicated that "he got GBS from getting a flu shot."

As noted above, petitioner filed his original petition in this case on March 19, 2019, initially pro se. On March 20, 2019, a notice of the entry of appearance by Heather Pearlman as attorney of record for respondent was filed. On March 21, 2019, the case was assigned to Special Master Herbrina Sanders. On August 30, 2019, the case was reassigned to Special Master Daniel Horner. On March 25, 2019, petitioner filed a motion to proceed in forma pauperis, which, according to the docket, was terminated on March 26, 2019. Petitioner appealed and, on March 28, 2019, Special Master Herbrina granted the motion to proceed in forma pauperis. After Ryan Pyles filed a notice of appearance for respondent, Renée Gentry filed a motion to substitute as petitioner's attorney on April 29, 2019, which the Special Master granted. Currently, Ms. Gentry, as part of the George Washington University Law School Vaccine Injury Clinic, remains the attorney of record for petitioner. On May 8, 2019, an order to vacate the previous order granting petitioner in forma pauperis status was filed.

On October 14, 2019, petitioner filed his extensive medical records from the Carolina Hospital, the Carolina Pines Regional Medical Center, the McLeod Regional

4

Medical Center, and HopeHealth, as exhibits before the Special Master. The exhibits also included an affidavit detailing petitioner's own account of his vaccination status. In his affidavit, petitioner claimed "he received the influenza vaccination on or about November 18, 2013." On March 27, 2020, petitioner filed yet additional medical records from the McLeod Regional Medical Center. On April 14, 2020, petitioner also filed further medical records from the McLeod Regional Medical Center. On August 16, 2020, petitioner once more filed further documents regarding billing at the Carolinas Hospital Center and the McLeod Regional Medical Center and, on September 29, 2020, petitioner filed additional medical records from the McLeod Regional Medical Center. After all these medical records were filed, the parties filed various status reports, and on December 17, 2020, Special Master Horner gave petitioner another chance to file any "additional evidence of additional evidence of his alleged injury-causing vaccination."

On February 23, 2021, petitioner filed a motion for ruling on the record. As noted above, petitioner again requested that the Special Master issue a finding of fact that he had "received an influenza vaccination on or about November 10, 2013." In the motion for ruling on the record, petitioner noted that one of his many screening assessments did indicate that he had received an influenza vaccination for the 2013-2014 flu season. Most of petitioner's motion focused on the recorded doctors' notes that associated his GBS with an influenza vaccination and the adverse health effects he suffers as a result. Petitioner contended that "the weight of the circumstantial evidence" "supports a finding that Petitioner received the influenza vaccination on or about November 10, 2013."

On March 9, 2021, respondent filed a response to the petitioner's motion. Respondent did not oppose a finding of fact by the Special Master, but answered that the record did not establish by a preponderance of the evidence that petitioner had in fact received the influenza vaccine and, therefore, respondent moved for dismissal of petitioner's claim for failure to demonstrate the receipt of an influenza vaccine and when it was received. Respondent, therefore, cross-moved for dismissal of petitioner's claim for failure to establish, as a threshold matter, that petitioner had indeed received an influenza vaccination for the year in question. Respondent focused on the numerous inconsistencies in petitioner's hospital screening assessments prior to the GBS diagnosis, most of which indicated that petitioner had not received a vaccine for the 2013-2014 flu season. Respondent argued that the doctors' notes pertaining to a linkage between petitioner's GBS diagnosis and an influenza vaccine administration were not sufficient to establish petitioner's claim. Respondent noted that the medical record also indicated that petitioner was struggling with substance abuse issues. Respondent claimed that due to the internal inconsistencies in petitioner's medical records and those between the medical records and petitioner's affidavit detailing the vaccine administration, petitioner failed to provide preponderant evidence that a vaccination had been administered to the petitioner as alleged.

On March 16, 2021, petitioner filed a reply brief and once again maintained that he had "received the influenza vaccination on or about November 10, 2013." Petitioner argued that direct medical documentation of the vaccination is not required to meet the preponderance of the evidence standard. He claimed the records reflecting that his GBS

5

followed an influenza vaccination, and those indicating he was allergic to the influenza vaccine, were more important than the earlier inconsistent screening assessments. Petitioner also noted that medical staff had been critical of him due to what the staff viewed as "drug-seeking behavior." He acknowledged that he was not a sympathetic victim, but argued that this was irrelevant to his case. Petitioner again asserted that, when viewing the record as a whole, there was preponderant evidence that he had received an influenza vaccination.

On August 19, 2021, Special Master Horner issued an appropriately reasoned decision dismissing the petition. See generally Matthews v. Sec'y of Health & Human Servs., 2021 WL 4190265. The Special Master wrote:

> Medical records and/or statements of a treating physician's views do not per se bind the special master to adopt the conclusions of such an individual, even if they must be considered and carefully evaluated. §300aa-13(b)(1); Snyder v. Sec'y of Health & Human Servs., 88 Fed. Cl. 706, 746 n.67 (2009) ("there is nothing . . . that mandates that the testimony of a treating physician is sacrosanct—that it must be accepted in its entirety and cannot be rebutted"). The views of treating physicians should also be weighed against other, contrary evidence also present in the record. Hibbard v. Sec'y of Health & Human Servs., 100 Fed. Cl. 742, 749 (2011) (not arbitrary or capricious for special master to weigh competing treating physicians' conclusions against each other), aff'd, 698 F.3d 1355 (Fed. Cir. 2012); Caves v. Sec'y of Health & Human Servs., 100 Fed. Cl. 119, 136 (2011), aff'd, 463 Fed. Appx. 932 (Fed. Cir. 2012); Veryzer v. Sec'y of Health & Human Servs., No. 06-522V, 2011 WL 1935813, at *17 (Fed. Cl. Spec. Mstr. Apr. 29, 2011), mot. for review denied, 100 Fed. Cl. 344, 356 (2011), aff'd without opinion, 475 Fed. Appx. 765 (Fed. Cir. 2012).

Matthews v. Sec'y of Health & Human Servs., 2021 WL 4190265, at *7. When addressing the medical notation that petitioner's GBS occurred after receiving an influenza shot, the Special Master wrote further:

> The source of information ultimately relied upon in subsequently noting to the contrary that petitioner's GBS followed a flu vaccine is not documented (Ex. 9, p. 294); however, to the extent that source of information would have been petitioner himself, his contemporaneous medical records document, as explained above, that he already had an established pattern of inconsistently reporting whether he had received a flu vaccine that year. Accordingly, reliance on a single, additional instance of this unreliable reporting by the MRMC treaters does not provide any meaningful evidence buttressing petitioner's claim, especially where the treaters initially arrived at their diagnosis [of GBS] without that information and then tried and failed to confirm the vaccination. Moreover, given that MRMC [McLeod Regional Medical Center] confirmed that Carolinas Hospital had no record of vaccination, the later notation that petitioner's GBS was preceded by a flu

6

>vaccine is conspicuous for the lack of any additional detail or indication of when petitioner purportedly received the vaccination.

Id. at *8 (capitalization in original; brackets added). Special Master Horner cited the various inconsistencies in the record, stating: "Additionally, these inconsistent notations were generated at two different facilities on nine different occasions, and both confirm and deny that petitioner was vaccinated. Many of these notations would have to be incorrect to allow for the record to support any of petitioner's various allegations." Id. at *6. Due to these inconsistencies, the Special Master stated that "neither petitioner's medical records nor his affidavit, alone or in combination, provide preponderant evidence that any flu vaccination was administered to petitioner in the days, weeks, or months prior to the onset of his GBS." Id. at *9.

Special Master Horner determined: "I find that there is not preponderant evidence that petitioner received a vaccination covered by this program and therefore dismiss this petition." Id. at *1. As noted above, on September 17, 2021, petitioner filed a motion for review in this court. The motion for review was assigned to the undersigned. On October 18, 2021, respondent filed a response to petitioner's motion for review.

## DISCUSSION

When reviewing a Special Master's decision, the assigned Judge of the United States Court of Federal Claims shall:

>(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
>
>(B) set aside any findings of fact or conclusions of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
>
>(C) remand the petition to the special master for further action in accordance with the court's direction.

Munn v. Sec'y of Health & Human Servs., 970 F.2d 863, 867 (Fed. Cir. 1992); see also 42 U.S.C. § 300aa-12(e)(2) (2018). The legislative history of the Vaccine Act states: "The conferees have provided for a limited standard for appeal from the [special] master's decision and do not intend that this procedure be used frequently, but rather in those cases in which a truly arbitrary decision has been made." H.R. Conf. Rep. No. 101-386, at 516–17, reprinted in 1989 U.S.C.C.A.N. 3018, 3120.

In Markovich v. Secretary of Health & Human Services, the United States Court of Appeals for the Federal Circuit wrote, "[u]nder the Vaccine Act, the Court of Federal Claims reviews the Chief Special Master's decision to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' 42 U.S.C. § 300aa-12(e)(2)(B)." Markovich v. Sec'y of Health & Human Servs., 477 F.3d 1353,

7

1355-56 (Fed. Cir.), cert. denied, 552 U.S. 816 (2007); see also K.G. v. Sec'y of Health & Human Servs., 951 F.3d 1374, 1379 (Fed. Cir. 2020); Oliver v. Sec'y of Health & Human Servs., 900 F.3d 1357, 1360 (Fed. Cir. 2018) (citing Milik v. Sec'y of Health & Human Servs., 822 F.3d 1367, 1375-76 (Fed. Cir. 2016)); Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs., 717 F.3d 1363, 1366 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2013) (The United States Court of Appeals for the Federal Circuit stated that "we 'perform[ ] the same task as the Court of Federal Claims and determine[ ] anew whether the special master's findings were arbitrary or capricious.'" (brackets in original) (quoting Lampe v. Sec'y of Health & Human Servs., 219 F.3d 1357, 1360 (Fed. Cir. 2000))); W.C. v. Sec'y of Health & Human Servs., 704 F.3d 1352, 1355 (Fed. Cir. 2013); Hibbard v. Sec'y of Health & Human Servs., 698 F.3d 1355, 1363 (Fed. Cir. 2012); de Bazan v. Sec'y of Health & Human Servs., 539 F.3d 1347, 1350 (Fed. Cir. 2008); Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347 (Fed. Cir.) ("Under the Vaccine Act, we review a decision of the special master under the same standard as the Court of Federal Claims and determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 42 U.S.C. § 300aa-12(e)(2)(B))), rehearing and rehearing en banc denied (Fed. Cir. 2008); Althen v. Sec'y of Health & Human Servs., 418 F.3d at 1277; Faup v. Sec'y of Health & Human Servs., 147 Fed. Cl. 445, 458 (2019); Dodd v. Sec'y of Health & Human Servs., 114 Fed. Cl. 43, 47 (2013); Taylor v. Sec'y of Health & Human Servs., 108 Fed. Cl. 807, 817 (2013). The abuse of discretion standard is applicable when the special master excludes evidence or limits the record upon which he or she relies. See Munn v. Sec'y of Health & Human Servs., 970 F.2d at 870. The United States Court of Appeals for the Federal Circuit has indicated that:

> These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed by us, as by the Claims Court judge, under the arbitrary and capricious standard; legal questions under the "not in accordance with law" standard; and discretionary rulings under the abuse of discretion standard. The latter will rarely come into play except where the special master excludes evidence.

Id. at 871 n.10; see also Carson ex rel. Carson v. Sec'y of Health & Human Servs., 727 F.3d 1365, 1369 (Fed. Cir. 2013); Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs., 717 F.3d at 1366; W.C. v. Sec'y of Health & Human Servs., 704 F.3d at 1355; Griglock v. Sec'y of Health & Human Servs., 687 F.3d 1371, 1374 (Fed. Cir. 2012); Porter v. Sec'y of Health & Human Servs., 663 F.3d 1242, 1249 (Fed. Cir. 2011) (citing Broekelschen v. Sec'y of Health & Human Servs., 618 F.3d at 1345) (explaining that the reviewing court "do[es] not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder") reh'g and reh'g en banc denied (Fed. Cir. 2012); Dodd v. Sec'y of Health & Human Servs., 114 Fed. Cl. at 56. "[T]he special masters have broad discretion to weigh evidence and make factual determinations." Dougherty v. Sec'y of Health & Human Servs., 141 Fed. Cl. 223, 229 (2018). As explained by the federal circuit:

> With regard to both fact-findings and fact-based conclusions, the key decision maker in the first instance is the special master. The Claims Court owes these findings and conclusions by the special master great deference – no change may be made absent first a determination that the special master was "arbitrary and capricious."

Munn v. Sec'y of Health & Human Servs., 970 F.2d at 870; see also 42 U.S.C. § 300aa-12(e)(2)(B).

Generally, "if the special master 'has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate.'" Hibbard v. Sec'y of Health & Human Servs., 698 F.3d at 1363 (quoting Hines v. Sec'y of Health & Human Servs., 940 F.2d 1518, 1528 (Fed. Cir. 1991)); see also Porter v. Sec'y of Health & Human Servs., 663 F.3d at 1253-54; Lampe v. Sec'y of Health & Human Servs., 219 F.3d at 1360; Avila ex rel. Avila v. Sec'y of Health & Human Servs., 90 Fed. Cl. 590, 594 (2009); Dixon v. Sec'y of Health & Human Servs., 61 Fed. Cl. 1, 8 (2004) ("The court's inquiry in this regard must therefore focus on whether the Special Master examined the 'relevant data' and articulated a 'satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" (quoting Motor Vehicle Mfrs. Association v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)))).

As noted by the United States Court of Appeals for the Federal Circuit:

> Congress assigned to a group of specialists, the Special Masters within the Court of Federal Claims, the unenviable job of sorting through these painful cases and, based upon their accumulated expertise in the field, judging the merits of the individual claims. The statute makes clear that, on review, the Court of Federal Claims is not to second guess the Special Masters [sic] fact-intensive conclusions; the standard of review is uniquely deferential for what is essentially a judicial process. Our cases make clear that, on our review of the judgment of the Court of Federal Claims, we remain equally deferential. That level of deference is especially apt in a case in which the medical evidence of causation is in dispute.

Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs., 717 F.3d at 1366-67 (modification in original) (quoting Hodges v. Sec'y of Health & Human Servs., 9 F.3d 958, 961 (Fed. Cir. 1993)); Hibbard v. Sec'y of Health & Human Servs., 698 F.3d at 1363; Locane v. Sec'y of Health & Human Servs., 685 F.3d 1375, 1380 (Fed. Cir. 2012). The United States Court of Appeals for the Federal Circuit has explained that the reviewing courts "'do not sit to reweigh the evidence. [If] the special master's conclusion [is] based on evidence in the record that [is] not wholly implausible, we are compelled to uphold that finding as not being arbitrary and capricious.'" Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs., 717 F.3d at 1367 (modification in original) (quoting

9

Lampe v. Sec'y of Health & Human Servs., 219 F.3d at 1363); see also K.G. v. Sec'y of Health & Human Servs., 951 F.3d at 1379 ("With respect to factual findings, however, we will uphold the special master's findings of fact unless they are clearly erroneous." (citing Althen v. Sec'y of Health & Human Servs., 418 F.3d at 1278)); Hibbard v. Sec'y of Health & Human Servs., 698 F.3d at 1363 (citing Cedillo v. Sec'y of Health & Human Servs., 617 F.3d at 1338).

> The United States Court of Appeals for the Federal Circuit has explained that: A petitioner can establish causation in one of two ways. Id. [Broekelschen v. Sec'y of Health & Human Servs., 618 F.3d at 1341] If the petitioner shows that he or she received a vaccination listed on the Vaccine Injury Table, 42 U.S.C. § 300aa–14, and suffered an injury listed on that table within a statutorily prescribed time period, then the Act presumes the vaccination caused the injury. Andreu [ ex rel. Andreu] v. Sec'y of Health & Human Servs., 569 F.3d 1367, 1374 (Fed. Cir. 2009). Where, as here, the injury is not on the Vaccine Injury Table, the petitioner may seek compensation by proving causation-in-fact.

Milik v. Sec'y of Health & Human Servs., 822 F.3d at 1379 (citing Andreu ex rel. Andreu v. Sec'y of Health & Human Servs., 569 F.3d at 1374); see also W.C. v. Sec'y of Health & Human Servs., 704 F.3d at 1356; Broekelschen v. Sec'y of Health & Human Servs., 618 F.3d at 1346; Pafford v. Sec'y of Health & Human Servs., 451 F.3d 1352, 1356 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied, 551 U.S. 1102 (2007); Grant v. Sec'y of Health & Human Servs., 956 F.2d 1144, 1147-48 (Fed. Cir. 1992); Faup v. Sec'y of Health & Human Servs., 147 Fed. Cl. at 458; Dodd v. Sec'y of Health & Human Servs., 114 Fed. Cl. at 50; Paluck v. Sec'y of Health & Human Servs., 104 Fed. Cl. 457, 467-68 (2012); Fesanco v. Sec'y of Health & Human Servs., 99 Fed. Cl. 28, 31 (2011).

When proving eligibility for compensation for a petition under the Vaccine Act, such as the one filed by Mr. Matthews, a petitioner must establish by a preponderance of the evidence that he received a vaccine set forth in the Vaccine Injury Table and that injury caused by the vaccination occurred within the required amount of time. See Althen v. Sec'y of Health & Human Servs., 418 F.3d at 1278; see also 42 U.S.C. § 300aa-11(c)(1)(A). Regarding the preponderance of the evidence standard, the Vaccine Act requires "'the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.'" Moberly ex rel. Moberly v. Sec'y of Health and Human Servs., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (quoting Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal., 508 U.S. 602 (1993)). In demonstrating this preponderance of evidence, petitioner may not rely on his or her testimony alone to establish preponderant evidence of vaccine administration. According to the Vaccine Act, "[t]he special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1).

In weighing the evidence pertaining to proof of vaccination, the Special Master has discretion to determine the relative weight of the evidence presented, including contemporaneous medical records and oral testimony. See Burns v. Sec'y of Health & Human Servs., 3 F.3d 415, 417 (Fed. Cir. 1993) (finding that the Special Master had thoroughly considered evidence in record, had discretion not to hold an additional evidentiary hearing); see also Hibbard v. Sec'y of Health & Human Servs., 698 F.3d at 1368 (finding it was not arbitrary or capricious for the Special Master to weigh diagnoses of different treating physicians against one another, including when their opinions conflict).

> "Clearly it is not then the role of this court to reweigh the factual evidence, or to assess whether the special master correctly evaluated the evidence. And of course we do not examine the probative value of the evidence or the credibility of the witnesses. These are all matters within the purview of the fact finder."

Dodd v. Sec'y of Health & Human Servs., 114 Fed. Cl. at 56 (quoting Munn v. Sec'y of Health & Human Servs., 970 F.2d at 870 n.10); see also Rich v. Sec'y of Health & Human Servs., 129 Fed. Cl. 642, 655 (2016); Paluck v. Sec'y of Health & Human Servs., 104 Fed. Cl. at 467 ("So long as those findings are 'based on evidence in the record that [is] not wholly implausible,' they will be accepted by the court." (quoting Lampe v. Sec'y of Health & Human Servs., 219 F.3d at 1363 (alteration in original))). "Determinations subject to review for abuse of discretion must be sustained unless 'manifestly erroneous.'" Heddens v. Sec'y of Health & Human Servs., 143 Fed. Cl. 193 (2019) (quoting Piscopo v. Sec'y of Health & Human Servs., 66 Fed. Cl. 49, 53 (2005) (citations omitted)).

Additionally, a Special Master is "not required to discuss every piece of evidence or testimony in [his or] her decision." Snyder ex rel. Snyder v. Sec'y of Health & Human Servs., 88 Fed. Cl. 706, 728 (2009) (brackets added). As explained by a Judge of the United States Court of Federal Claims:

> "[W]hile the special master need not address every snippet of evidence adduced in the case, see id. [Doe v. Sec'y of Health & Human Servs., 601 F.3d 1349, 1355 (Fed. Cir. 2010)], he [or she] cannot dismiss so much contrary evidence that it appears that he 'simply failed to consider genuinely the evidentiary record before him [or her].'" (brackets added) (quoting Campbell v. Sec'y of Health & Human Servs., 97 Fed. Cl. 650, 668 (2011))).

A Special Master is required to acknowledge that "the purpose of the Vaccine Act's preponderance standard is to allow the finding of causation in a field bereft of complete and direct proof of how vaccines affect the human body," even if the possible link between the vaccine and the injury is "hitherto unproven." Althen v. Sec'y of Health & Human Servs., 418 F.3d at 1280; see Porter v. Sec'y of Health & Human Servs., 663 F.3d at 1261. In that vein, "close calls regarding causation are resolved in favor of injured

claimants." Id. (citing Knudsen v. Sec'y of Health & Human Servs., 35 F.3d 543, 548-49 (Fed. Cir. 1994)).

With regard to the Special Master's weighing of evidence when testimony conflicts with contemporaneous medical records, a Special Master generally should afford contemporaneous medical records greater weight than conflicting testimony offered after the fact. See Murphy v. Sec'y of Health & Human Servs., 23 Cl. Ct. 726, 733 (1991) (citing United States v. United States Gypsum Co., 333 U.S. 364, 396 (1948) ("It has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight.")), aff'd, 968 F.2d 1226 (Fed. Cir.), reh'g denied (Fed. Cir. 1992). This is because medical records, created contemporaneously with the events they describe are presumed to be accurate and complete. See Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

In his motion for review, petitioner claims that:

It is not Mr. Matthews' burden to explain the inconsistency in the records, and it was an abuse of discretion on the part of the Special Master to require it and specifically, to use Mr. Matthews inability to explain it as the lens through which he viewed the evidence.

Petitioner further claims that "[t]he Special Master abused his discretion by characterizing Petitioner's medical records in such a way as to give them dispositive weight against petitioner as to the issue of vaccination." Petitioner asserted this characterization led the Special Master to conclude there was not preponderant evidence that a vaccination occurred. Petitioner maintained that he had demonstrated, by preponderance of the evidence, that he had received the influenza vaccine, as referenced in his medical records. The Court notes, however, that from the time Ryan Pyles filed a notice of appearance to represent respondent, Mr. Matthews was no longer appearing pro se and, during the majority of the proceedings in this case, he was represented.

As explained above, in this case, petitioner has the burden to demonstrate, by preponderant evidence, that his medical records establish that he had received the influenza vaccination at a time that it could be recognized by the Vaccine Compensation Injury Program as causation for petitioner's GBS. See 300aa-11(c)(1). The Vaccine Act indicates that "[t]he special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1) If the Special Master finds that the petitioner has not met his burden and this decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, the reviewing court shall uphold that decision. See 42 U.S.C. § 300aa-12(e)(2).

The Special Master found that petitioner failed to demonstrate, by preponderant evidence, that he had received an influenza vaccination in the months before the onset of his GBS. The Special Master's decision explained:

12

> Considering the record as a whole, several aspects of petitioner's medical history warrant discussion, namely: inconsistent references to petitioner's vaccination status prior to onset of his GBS; the implausibility of the more detailed account of vaccination provided by petitioner; references to efforts made to ascertain petitioner's vaccination status during his hospitalization for his GBS; and the undisclosed basis for the references to petitioner becoming ineligible for future flu vaccinations. Considering the record as a whole, there is not preponderant evidence that petitioner received a flu vaccination at any point in the days, weeks, or months preceding onset of his GBS.

Matthews v. Sec'y of Health & Human Servs., 2021 WL 4190265, at *6.

After careful review of the record and the Special Master's decision to dismiss Mr. Matthews' petition, the court finds that Special Master Horner's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 42 U.S.C. § 300aa-12(e)(2). Petitioner failed to meet his burden of demonstrating by a preponderance of the evidence that he had received an influenza vaccination in the time leading up to the onset of his GBS. § 300aa-11(c)(1)(A). The unexplained and plentiful inconsistencies in the record before the Special Master render the evidence petitioner tried to rely on insufficient to support petitioner's claim of having received the vaccination at a time that could have caused petitioner's GBS. These inconsistencies include the contradictory responses to the vaccination prompts on the hospital screening assessments, the differing dates on which petitioner claims he received an influenza vaccination, and the differing details of what occurred during his November 18-21, 2013, hospital stay at the Carolinas Hospital System. The remaining indications that an influenza vaccination occurred was the petitioner's own account of an influenza vaccine administered "on or about November 18, 2013," which was inconsistent with his petition and subsequent motion practice which asserted he received a vaccination "on or around November 10, 2013, and which was contradicted by the medical records of his November 18-21, 2013, hospital stay. Petitioner failed to meet the requirement set forth in 42 U.S.C. § 300aa-13(a)(1) that he may not establish his case "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1).

As noted above, in reviewing Vaccine Act decisions, "'[t]he statute makes clear that, on review, the United States Court of Federal Claims is not to second guess the Special Masters [sic] fact-intensive conclusions; the standard of review is uniquely deferential for what is essentially a judicial process.'" Deribeaux ex rel. Deribeaux v. Sec'y of Health & Human Servs., 717 F.3d at 1366 (quoting Hodges v. Sec'y of Health & Human Servs., 9 F.3d at 961). When "'the special master's conclusion was based on evidence in the record that was not wholly implausible, we are compelled to uphold that finding as not being arbitrary and capricious.'" Id. at 1367 (quoting Lampe v. Sec'y of Health & Human Servs., 219 F.3d at 1363).

13

With no explanation for the inconsistencies in petitioner's medical records regarding whether he had received an influenza vaccination, or when he received the influenza vaccination, the Special Master, after comprehensively reviewing the record, found the inconsistencies were not explainable and, therefore, "five separate notations regarding his vaccination status would necessarily be incorrectly recorded," to accept petitioner's version. Furthermore, the Special Master noted that petitioner's own medical records labeled him a "difficult historian." According to the Special Master, "[t]hus, without more, these notations cannot serve as evidence that any vaccination occurred." Matthews v. Sec'y of Health & Human Servs., 2021 WL 4190265, at *6.

Petitioner tried to place increased importance on certain medical notations made after his diagnosis of GBS. As with the multiple inconsistent screening assessments on whether petitioner had received an influenza vaccination, neither petitioner nor his medical records provided a basis for the notations indicating that petitioner "got GBS from getting a flu shot," or that he was allergic to the influenza vaccine. Before these notations appeared in petitioner's medical records, a separate notation instructed a nurse at the McLeod Regional Medical Center to verify petitioner's vaccination with the Carolinas Hospital System. This notation was followed by the word "done," with no date or location listed or whether the word "done" referred to a vaccination or a check of petitioner's records. Another notation, dated December 12, 2013, stated a pharmacist at the Carolinas Hospital System confirmed "there are no records of pt [patient] receiving the vaccination." Only after the December 12, 2013 notation, did the notations start to appear in petitioner's medical records, leaving the source of his vaccination status unknown. Given that neither the Carolinas Health System, nor petitioner's billing statements verified the time or place of petitioner's vaccination, the Special Master reasonably found that the evidence did not establish that petitioner had been given an influenza vaccination prior to contracting GBS. Regarding the allergy notation, the Special Master's decision noted the data suggesting that those who suffer from GBS "are generally cautioned against receipt of the flu vaccine without specific respect to the underlying trigger of their prior GBS."

As previously stated, "[t]he special master or court may not make such a finding [of eligibility for compensation] based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Although Mr. Matthews' petition alleges that he "received the Influenza Vaccination on or around November 10, 2013," petitioner claimed in the affidavit he submitted to the Special Master that he received the vaccination during his November 18-21, 2013, stay at the Carolinas Hospital System after he had surgery for a forearm laceration. In his motion for review before the undersigned, petitioner alleged that the Special Master had erred when he concluded that there were no medical records consistent with this account. Petitioner pointed out that "the initial assessment form filled out on November 18, 2013, is where it states, 'Flu Vaccine This Season – Yes.'" The Special Master reasonably listed this screening assessment as one that was incorrect to be consistent with petitioner's claims because the hospital record does not support that petitioner received a vaccination on November 18, 2013. Given that petitioner stated during his initial screening assessment on November 18, 2013, that he had already received a flu vaccination, the Special Master

14

reasonably concluded that the hospital did not administer the influenza vaccination during the admission to the Carolinas Hospital System from November 18-21, 2013.

Petitioner further asserts that the Special Master's analysis of the record was flawed because, under the vaccine compensation system, "close calls regarding causation are resolved in favor of injured claimants." Althen v. Sec'y of Health & Human Servs., 418 F.3d at 1280 (citing Knudsen v. Sec'y of Health & Human Servs., 35 F.3d at 548-49). Petitioner claims that this rule should apply to facts, as well as to causation. It is unlikely, however, that as part of the overall statutory National Childhood Vaccine Injury Act, failure to document vaccination is permissible to allow a petitioner to receive compensation. Whether or not a petitioner had received a vaccination is a statutory requirement under the Act. 42 U.S.C. § 300aa-11(c)(1)(A). Respondent correctly states in its response to petitioner's motion for review that preponderant proof is the requirement for proving the establishment of a critical fact necessary to be eligible for compensation. See Moberly ex rel. Moberly v. Secretary of Health and Human Servs., 592 F.3d at 1322 n.2 (quoting Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal., 508 U.S. at 622).

As a result of the Special Master's analysis of the record, he found there was insufficient evidence to support petitioner's inconsistent versions of when or if an influenza vaccination was administered to the petitioner. With no contemporary medical records establishing a clear date of vaccination and with multiple records indicating that petitioner had not been vaccinated, the Special Master properly found that there was a lack of proof in the record before the court presented by petitioner of an influenza vaccine administration which could have caused his GBS symptoms, as unfortunate as the GBS diagnosis is for petitioner. See 42 U.S.C. § 300aa-13(a)(1).

## CONCLUSION

This court finds that Special Master Horner fully examined the relevant available evidence and that his conclusions with respect to the significance of the evidence in the record, as a whole, were not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). The Special Master's decision provided a comprehensive review of the record and came to the proper conclusion that the record, as a whole, did not constitute preponderant evidence that an influenza vaccine was administered to petitioner which could have caused his GBS. Therefore, the Special Master properly denied petitioner's request for compensation. The Special Master's ruling is affirmed. Petitioner's motion for review is **DENIED**. The above-captioned case brought by Mr. Matthews is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**
