# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-414V
Filed: September 23, 2022

| | |
|---|---|
| JOHNNY MATTHEWS,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>    Respondent. | Attorneys' fees and costs; Reasonable basis; Evidence of vaccination |

*Renee J. Gentry*, Vaccine Injury Clinic, George Washington Univ. Law School, Washington D.C, for petitioner.
*Ryan Daniel Pyles*, U.S. Department of Justice, Washington, DC, for respondent.

### Decision Regarding Attorneys' Fees and Costs[1]

On March 19, 2019, petitioner, Johnny Matthews, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that he suffered Guillain-Barre Syndrome ("GBS") caused by his receipt of an influenza ("flu") vaccination "on or around" November 10, 2013. (ECF No. 1, p. 1.) Petitioner's case was ultimately dismissed for failure to establish that he had received a vaccine covered by this Program. (ECF No. 53.)

Petitioner subsequently filed a motion for attorneys' fees and costs. (ECF. No. 64.) Respondent opposes this motion on the grounds that petitioner lacked either good faith or a reasonable basis in filing this petition. (ECF. No. 64.) For the reasons described below, petitioner is entitled to an award of attorneys' fees and costs in the reduced amount of $33,556.18.

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

1

I.  **Procedural History**

This case was initially filed *pro se* by petitioner and was originally assigned to Special Master Sanders. His current counsel, Ms. Gentry, was substituted as counsel on April 29, 2019. (ECF No. 14.) The case was subsequently reassigned to me on August 28, 2019. (ECF No. 27.)

Petitioner's initial filings were inconsistent with respect to the date of petitioner's alleged vaccination. His petition at turns referenced a date of either November 1, 2013, or November 10, 2013. (ECF No. 1, p. 1.) A separate filing, also captioned as a petition, indicated the vaccination occurred on an unspecified date in October 2013. (ECF No. 7, p. 1.) Petitioner later filed medical records and an affidavit on October 14, 2019. (ECF No. 30; Exs. 1-5.) His affidavit described the circumstances of his vaccination and indicated it was administered in connection with a surgery that occurred on November 18, 2013. (Ex. 5, p. 1.) No record of vaccine administration was ever filed.

After petitioner confirmed he had filed all of his medical records, respondent filed a Rule 4(c) Report recommending against compensation. (ECF No. 48.) Respondent contended there was insufficient proof of vaccination. (*Id*.)

On February 23, 2021, petitioner filed a motion for a finding of fact regarding the question of whether he received a flu vaccination as alleged. (ECF No. 50.) On August 19, 2021, I found that neither petitioner's medical records nor his affidavit, alone or in combination, provided preponderant evidence that any flu vaccination was administered prior to the onset of petitioner's GBS. (ECF No. 53; 2021 WL 4190265 (Fed. Cl. Spec. Mstr. Aug. 19, 2021).)

On September 17, 2021, petitioner filed a Motion for Review. (ECF No. 55.) Judge Horn of the US Court of Federal Claims denied the motion holding that the Special Master did not abuse his discretion in finding that the record did not constitute preponderant evidence that an influenza vaccine was administered to petitioner prior to his GBS diagnosis. (ECF No. 58; 157 Fed. Cl. 777 (2021).)

On April 5, 2022, petitioner filed a motion requesting $27,189.00 in attorneys' fees, $9,517.50 in student fees, and $589.18 in costs. (ECF No. 64.) On April 15, 2022, respondent filed a response requesting the petitioner's motion for an award of fees and costs be denied on the grounds that his claim lacked reasonable basis. (ECF. No. 66.) No reply was filed. This motion is now ripe for resolution.

II.  **Good Faith and Reasonable Basis**

a.  **Relevant Factual History**

The factual history is set forth in greater detail in both the undersigned's dismissal decision and the Court's order and opinion denying petitioner's motion for

review.  (ECF No. 53, pp. 3-5; ECF No. 58, pp. 2-5.)  Most pertinent to this motion, no record of vaccination exists for the vaccine allegedly at issue.  However, some specific references in petitioner's contemporaneous treatment records provided *minimal* support for the allegation.

In the months prior to his hospitalization for GBS, petitioner sought medical treatment on a number of occasions from two different hospitals.  At these times, he was screened to determine whether he had received his seasonal flu vaccine.  He answered inconsistently. (*Compare* Ex. 1, p. 13 (no on 10/13/13); Ex. 1, p. 29 (no on 10/28/13); Ex. 1, p. 43 (yes on 11/10/13); Ex. 1, p. 111 (yes on 11/18/13); Ex. 1, p. 170 (no on 11/25/13); Ex. 4, p. 1987 (vaccinations "current"); Ex. 1, p. 192 (no on 11/28/13); Ex. 4, pp. 633, 636 (no on 11/29/13); Ex. 4, p. 253 (yes on 1/18/14).)  In the decision dismissing this case, I concluded for reasons discussed in greater detail within that decision that these inconsistent responses could not be harmonized with petitioner's allegations and "without more, these notations cannot serve as evidence that any vaccination occurred."  (ECF No. 53, p. 9.)

On November 18, 2013, petitioner returned to the Carolinas Hospital emergency department with a severe right forearm wound sustained from a knife attack.  (Ex. 1, p. 98.)  Petitioner averred that he received his flu vaccination in the course of this hospitalization.  (Ex. 5, p. 1.)  Again, for reasons discussed in greater detail in the decision dismissing this case, I concluded that "[t]he circumstances petitioner describes simply do not appear to be possible in light of what his hospitalization records show to have been his course of care."  (ECF No. 53, p. 9.)  I indicated that "due to the facial unreliability of petitioner's account it is not necessary to reach the question of petitioner's credibility with regard to the specific points raised by respondent."  (*Id*. at n. 5.)  I further noted that "petitioner's recollection is flatly contradicted by the specific confirmation contained in the hospital records that petitioner declined to be vaccinated during this hospitalization and that no flu vaccination was administered."  (*Id*. at 9.)

Petitioner was subsequently admitted to a different hospital on November 29, 2013, for what was later diagnosed as GBS.  His flu vaccination status upon admission was confirmed as indicating no flu vaccine for the current flu season.  (Ex. 4, pp. 633, 636.)  An order was entered to administer a flu vaccination at discharge.  (Ex. 4, p. 2084.)  Nonetheless, in the course of his ensuing hospitalization, petitioner's physicians made specific efforts to confirm whether he had been previously vaccinated.

A notation appears in petitioner's medical records dated December 12, 2013 instructing a nurse to call the Carolinas Hospital to determine whether a flu shot had been administered during petitioner's prior admission.  (Ex. 9, p. 307.)  A separate notation includes a checkmark and the word "done."  (*Id*.)  Clinical notes from the same date indicate: "contacted John Pennstrom, pharmacist at Carolinas Health System per MD order to find out if pt received flu shot prior to discharge. Stated there are no records of pt receiving the vaccination."  (Ex. 4, p. 298.)  Subsequently, however, a handwritten note was added in petitioner's medical file dated December 21, 2013, which indicates "recent shot followed by Guillain-Barre Syndrome" and instructs that the flu

3

vaccine should be added to petitioner's allergy list. (Ex. 9, p. 294.) A later notation dated January 18, 2014 further indicates that "patient stated to nurse he already had the flu vaccine." (Ex. 4, p. 253.)

Following the December 21, 2013 notation that petitioner's GBS followed vaccination, his record was updated to include the flu vaccine among his allergies. (Ex. 4, p. 533.) At that time, Dr. Duncan also discontinued the instruction that petitioner receive the flu vaccine upon discharge. (Ex. 9, p. 538.) A follow up consultation for pain management on January 7, 2014 indicated under allergies that petitioner "is now no longer a candidate for the flu shot," but did not discuss petitioner's prior vaccination history or the etiology of his GBS. (Ex. 4, p. 525.) Subsequently, it is noted in the medical records of other providers that his GBS was secondary to a flu vaccination (Ex. 3, p. 18) and the flu vaccine continued to be listed as an allergy (*e.g.* Ex. 9, p. 7).

### b. Legal Standard

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). Petitioners who are denied compensation for their claims brought under the Vaccine Act may be awarded attorneys' fees and costs "if the Special Master or Court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360–61 (Fed. Cir. 2012). Such an award is within the discretion of the Special Master. 42 U.S.C. § 300aa-15(e)(1). Thus, even if a claim is brought in good faith and has a reasonable basis, a Special Master may still deny attorneys' fees. *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362. "Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017).

"Good faith" is a subjective standard. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). The standard for finding good faith has been described as "very low," and findings that a petition lacked good faith are rare. *Heath v. Sec'y of Health & Human Servs.*, No. 08-86V, 2011 WL 4433646, *2 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

"Reasonable basis," however, is an objective standard. Unlike the good faith inquiry, reasonable basis requires more than just petitioner's belief in his claim. *See Turner*, 2007 WL 4410030, at *6. In *Cottingham v. Secretary of Health & Human Services*, the Federal Circuit explained that to demonstrate a "reasonable basis," the petitioner must come forward with objective evidence relating to the Vaccine Act's prima facie petition requirements for the filing of a claim. 971 F.3d 1337, 1345-46 (Fed. Cir. 2020). Specifically, the petition must include an affidavit and supporting documentation demonstrated that the injured vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;

>(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
>
>(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
>
>(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
>
>(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Id*. (citing § 300aa-11(c)(1).)  In *Cottingham*, as in most reasonable basis inquiries, it was the third element -- the fact of an injury caused by the vaccine -- that was at issue.  *Id*. at 1346.  Here, however, the primary issue given the reason for dismissal is the first of the above-listed requirements – the fact of the vaccination itself – rather than the resulting causal relationship between that alleged vaccination and the injury.

      To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success.  *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *6-*7 (Fed. Cl. 2012).   In general, a reasonable basis analysis "may include an examination of a number of objective factors, such as the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation."  *Amankwaa v. Sec'y of Health & Human Servs*., 138 Fed. Cl. 282, 289 (2018); *accord Cottingham*, 971 F.3d 1337.  "More than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis."  *Cottingham,* 917 F.3d at 1346.  For the reasonable basis requirement, "the burden is on the petitioner to affirmatively demonstrate a reasonable basis."  *McKellar v Sec'y of Health & Human Servs*., 101 Fed. Cl. 297, 305 (2011).

      More than a mere scintilla of evidence has been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference . . ." *Cottingham v. Sec'y of Health & Human Servs.,* 154 Fed. Cl. 790, 795 (2021) (citing *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)).  A reasonable basis may be demonstrated by circumstantial evidence.  *Cottingham*, 971 F.3d. at 1346.  An affidavit constitutes objective evidence that must be considered in determining whether there is a reasonable basis when it contains testimony the witness is competent to give, but a special master is not required to find that the affidavit alone constitutes more than a mere scintilla of evidence.  *James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1380-81 (Fed. Cir. 2021).  Particularly, "medical records may serve as important corroborating evidence for evaluating testimony's credibility".  *James-Cornelius*, 984 F.3d. at 1380.

      The Federal Circuit has also confirmed that a case can lose its reasonable basis as it proceeds.  *Perreira v. Sec'y of Health & Human Servs*., 33 F.3d 1375, 1376-77

(Fed. Cir. 1994). Thus, for example, a special master does not necessarily abuse his discretion in finding that an appeal of factual findings can lack a reasonable basis "in light of this court's highly deferential standard of review." *R.K. v. Sec'y of Health & Human Servs.*, 760 Fed. Appx. 1010, 1013 (Fed. Cir. 2019); *see also Phillips v. Sec'y of Health & Human Servs.*, 988 F.2d 111, 112 (Fed. Cir. 1993) (Plager, J., concurring) (noting that "the appropriateness of an award of fees related to the initial proceedings before the special master is an issue quite separate from the appropriateness of fees attributable to an appeal to this court.")

### c. Party Contentions

In his motion, petitioner requests that the Court grant reasonable compensation as allowed by the Vaccine Act. He did not advance any specific argument in favor of his request. (ECF No. 64.)

In response, respondent argued that petitioner lacked good faith to bring this claim. Specifically, he contended that "petitioner himself ought to have been able to cogently and clearly explain the factual circumstances of any alleged flu vaccination, which he failed to do, and the Special Master correctly determined that petitioner's affidavit was neither reliable nor persuasive." (ECF No. 66, p. 8.)

Respondent also argued that this claim lacked a reasonable basis. Respondent stresses that "[g]eneral obfuscation in this record about the alleged dates and circumstances of vaccination additionally weigh against a finding of reasonable basis." (*Id*. at 12.) Additionally, even if the claim initially had a reasonable basis, respondent further argues that the later motion for review lacked a reasonable basis, because it was "dependent on a clearly wrong, and indefensible, argument – that petitioners as a matter of law are entitled to a presumption in their favor of factual determinations." (*Id*. at 13 (citing Motion for Review at 8-9; Opinion at 14-15 (rejecting petitioner's argument)).)

Petitioner filed no reply.

### d. Analysis of Good Faith and Reasonable Basis

There is no debate in this case that petitioner actually suffered GBS, the effects of which lasted for more than six months. And, even accounting for the inconsistency in his pleadings, if petitioner had demonstrated that he had received the flu vaccine at any point from mid- to late-October through November of 2013, he would have been afforded a presumption under the Vaccine Injury Table that his GBS was caused by his flu vaccine. 42 C.F.R. 100.3(a)(XIV). Rather, as noted above, the reasonable basis and good faith inquiries turn on whether petitioner presented "more than a mere scintilla of evidence" that he received a flu vaccine as alleged and whether that minimal evidence is compatible with an honest belief in his claim.

As observed in the decision dismissing this case, the fact of a vaccination need not itself be proven by medical records or medical opinion. *See, e.g. Wonish v. Sec'y of*

6

*Health & Human Servs.*, No. 90-667V, 1991 WL 83959, at *4 (Fed. Cl. Spec. Mstr. May 6, 1991) (stating with regard to § 300aa-13(a)(1) that "it seems obvious then that not all elements must be established by medical evidence" and that "vaccination is an event that in ordinary litigation could be established by lay testimony. Medical expertise is not typically required."); *see also Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995), (noting that "the lack of contemporaneous documentary proof of vaccination, however, does not necessarily bar recovery."), *aff'd* 73 F. 3d 381 (Fed. Cir. 1995).  The Federal Circuit has likewise confirmed in the reasonable basis context that, while a petitioner must provide objective evidence supporting the reasonable basis for the filing of the petition, such evidence may be circumstantial.  *Cottingham*, 971 F.3d at 1346.

Examining the record of this case, the evidence falls far short of preponderant evidence that petitioner received the vaccine alleged to have caused his GBS for all the reasons discussed in the dismissal decision.  There is, of course, no record of vaccine administration.  Additionally, I concluded that neither petitioner's history of inconsistently reporting the fact of a flu vaccination upon screening nor his facially unreliable affidavit provided *any* evidence that a vaccination had occurred.  Accordingly, this same material likewise fails to contribute to petitioner's showing of "more than a mere scintilla of evidence" that the alleged vaccination occurred as required by the reasonable basis inquiry.  Nonetheless, in the course of his hospitalization for GBS, petitioner's treating physicians made significant attempts to determine whether he had been vaccinated.  After engaging in this effort, the hospital initially confirmed the lack of any vaccination record consistent with what he now recalls (Ex.4, p. 298); however, they later noted in his records on December 21, 2013, that he had been vaccinated (Ex. 9, p. 294) and appear to have accepted that as fact moving forward (Ex. 3, p. 18; Ex. 4, p. 525, 533; Ex. 9, pp. 7, 538).  This December 21, 2013 notation likely derived from petitioner himself, though the source of the information is not actually indicated.[2]

Especially because the December 21st notation lacked any detail regarding the timing or other details of the purported vaccination, neither it nor the subsequent reliance on it, was persuasive or sufficient to provide preponderant evidence of vaccination when considered in the context of the record as a whole.  It does, however, constitute at least some evidence of vaccination contemporaneous to petitioner's period of treatment, which is when petitioner's vaccination status was of heightened relevance to his treating physicians. *Accord Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed.Cir.1993) (explaining that contemporaneous medical records are

---

[2] In the dismissal decision, I explained that at the time of his December 6, 2013 neurology consultation, petitioner was intubated and sedated.  (ECF No. 53, p. 4 (citing Ex. 9, pp. 215-16).)  Accordingly, he was initially diagnosed with GBS without respect to whether he had a prior vaccination.  The hospital subsequently sought to confirm a prior vaccination from the Carolinas Hospital on December 12, 2013 and were informed by that facility that no vaccination record existed. (*Id.* (citing Ex. 4, pp. 307, 298).)  However, by the time of the December 21, 2013 notation, petitioner was awake and communicating with his physicians. (*Id.* at 5 (citing Ex. 4, p. 279).)  And, although the December 21st notation itself does not indicate the source of information, petitioner's records later confirm as of January 18, 2014, that petitioner did report a prior vaccination.  (*Id.* (citing Ex. 4, p. 253).)

generally considered trustworthy because they "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions.")

Notations that would not necessarily be persuasive in resolving a case on the merits under the preponderant evidence standard may still be probative with respect to the less onerous reasonable basis standard. *Compare, e.g., James-Cornelius*, 984 F.3d at 1380 (finding the notation "??VAERS" might be probative of reasonable basis in suggesting a belief that symptoms may have been vaccine caused) and *Stapleford v. Sec'y of Health and Human Servs.,* No. 03-234V, 2009 WL 1456441, at *17 n.24 (Fed. Cl. Spec. Mstr. May 1, 2009) (explaining in the context of preponderant evidence of causation-in-fact that a treating physician questioning a causal relationship "is quite different from an indication that such physician has reached a *conclusion* concerning a causal relationship") (emphasis in original), *aff'd*, 89 Fed. Cl. 456 (2009). And, notably, a different petitioner was able, on a very different overall record, to preponderantly establish the fact of vaccination based on this type of indirect evidence from treatment records. *See Gerard v. Sec'y of Health & Human Servs*., No. 08-786V, 2013 WL 6916045 (Fed. Cl. Spec. Mstr. Dec. 16, 2013), *reconsideration granted* 2014 WL 4293342 (Fed. Cl. Spec. Mstr. Aug. 8, 2014). Accordingly, petitioner's report of a prior vaccination to his care providers in the specific context of his treatment for GBS, while not providing preponderant evidence of vaccination on this record, provides more than a mere scintilla of evidence supporting his allegation.

This also speaks to petitioner's "good faith" in initially bringing the claim. "Good faith" has previously been understood as requiring that "petitioner honestly believed that he had suffered a vaccine-related injury." *Turner*, 2007 WL 4410030, at *5. Here, the medical records reflect a contemporaneous assertion by petitioner occurring in the context of treatment that he had been previously vaccinated, albeit without further detail. (Ex. 9, p. 294.) The records also appear to suggest that petitioner's physicians cautioned him (in the context of avoiding future injury) regarding the general causal relationship between the flu vaccine and GBS during that same course of treatment. (Ex. 3, p. 18; Ex. 4, p. 525, 533; Ex. 9, pp. 7, 538). Given the inconsistency of petitioner's recollection regarding the date of his vaccination and given that I concluded his specific affidavit account of the circumstances of vaccination was facially unreliable, respondent's skepticism regarding petitioner's good faith is understandable. However, good faith is not completely coextensive with cogent recollection. Here, although petitioner clearly did not reliably articulate the circumstances of his alleged vaccination years after the fact, there is evidence to suggest that petitioner likely first developed a belief that his GBS was vaccine-caused during his hospitalization, which was years before he ultimately brought this claim. This is sufficient to support a showing of good faith regardless of the fact that petitioner was ultimately unable to reliably provide specific recollections to support that belief.

Respondent further argues that, even if petitioner did initially present this case in good faith and with a reasonable basis, his further pursuit of a motion for review lacked a reasonable basis. In that regard, it is well established in this Program that reasonable basis may dissipate as a case proceeds. *Perreira*, 33 F.3d at 1376-77. Moreover, prior

decisions going back decades have cautioned that "counsel who choose to pursue basically hopeless appeals of Program decisions, especially those turning on credibility determinations, should not be surprised to find that the Program will not compensate their time spent upon such appeals." *Johnson v. Sec'y of Health & Human Servs.*, 1992 WL 247565, at *2 (Fed. Cl. Spec. Mstr. Sept. 14, 1992).  However, there is no separate test to determine whether a motion for review was reasonable.  *Morse v. Sec'y of Health & Human Servs.*, 93 Fed. Cl. 780 (2010).  Moreover, "[a]n appeal having a small chance for success is not for that reason alone frivolous."  *Id.* at 789 (quoting *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1578 (Fed. Cir. 1991).)  And, although appeals of fact findings face a deferential standard of review, such appeals are not *per se* unreasonable even if it is possible for a special master to act within his discretion in denying fees and costs for such an appeal.  *R.K.*, 760 Fed. Appx. 1010, 1013.

In this case, I share respondent's concern that petitioner's motion for review may have had significant shortcomings; however, given that the motion for review was a direct challenge to a case dispositive fact finding, and given that the record was not *wholly* without evidence supporting petitioner's allegation, I do not view the fact finding itself (and the attendant standard of review) as a change in circumstances that would cause reasonable basis to dissipate.  Rather, the shortcomings of petitioner's motion for review are addressed below as a matter of the reasonableness of the hours billed to craft that motion.

### III.     Amount of the Award

#### a.  Reasonableness of Rates and Hours Generally

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008).  This is a two-step process.  *Id.* at 1347-48.  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  *Id.* at 1348.  Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs."  *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl 1991.)  Moreover, Special Masters are entitled to rely on their own experience and understanding of the issues raised.  *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed.Cir.1993) (per curiam).

In this case, I have reviewed the billing records and additional documentation submitted with petitioner's motion.  Upon my review, the overall amount sought in attorneys' fees and costs is reasonable and the hourly rates and hours billed are reasonable and appropriate, except as discussed below.  The requested costs are reasonable and sufficiently documented.

### b. Reasonableness of Hours Devoted to Motion for Review

Counsel has a duty to avoid frivolous litigation and should use "reasoned judgment in determining whether to . . . pursue a claim." *Murphy v. Sec'y of Health & Human Servs.*, 30 Fed. Cl. 60, 62 (1993), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995). "[T]he [Vaccine] Program's interest in promoting attorney representation in vaccine cases, as contemplated by the attorneys' fees provision of the statute, must be balanced carefully against the court's examination of the reasonableness of the basis for bringing the vaccine petition." *Turner*, 2007 WL 4410030, at *11. Although counsel has an "ethical obligation to be a zealous advocate," that does not give counsel a "blank check to incur expenses without regard to the merits of [the] claim." *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992). The duty to exercise billing judgment extends to work performed in the context of pursuing a motion for review. *Morse*, 93 Fed. Cl. at 790-91.

Here, there were 14 hours of student work dedicated to substantive work on petitioner's motion for review at a rate of $150 per hour. (ECF No. 64-1, p. 21.) Additionally, Ms. Gentry billed 5.5 hours of attorney time at a rate of $489 per hour to review that student work. (*Id*. at 10.) In total, the petitioner seeks reimbursement of $4,789.50 for attorneys' fees dedicated to his motion for review. In the abstract, this appears to be a very reasonable sum. In the reality of this case, however, these hours were not all reasonably billed given the contents of the resulting motion.

The issue presented by this case – i.e., whether vaccination occurred as alleged – was a simple and discrete, yet indisputably case dispositive, factual issue. Accordingly, assessing the merits of a potential motion for review was unusually clear-cut. Additionally, as noted in *R.K.*, when a special master resolves a factual question, review of that determination is subject to a "highly deferential standard." In fact, the Court's Opinion and Order in this case stressed that "[c]learly it is not then the role of this court to reweigh the factual evidence . . . ." (ECF No. 58, p. 11 (quoting *Dodd v. Sec'y of Health & Human Servs*., 114 Fed. Cl. 43, 50 (2013).) Petitioner's motion for review acknowledged the relevant standard of review. (ECF No. 55, p. 8.) Thus, petitioner was clearly aware that challenging the outcome of this case on review would require more than simply rearguing the underlying evidence.

However, petitioner's motion explicitly acknowledged that "[p]etitioner is not saying the Special Master failed to review the record, to the contrary, he reviewed the record extensively in his decision." (ECF No. 55, p. 13.) Instead, respondent argues that petitioner's motion for review urged a "clearly wrong, and indefensible" interpretation of his burden of proof. (ECF No. 66, p. 13.) Specifically, respondent suggests that petitioner argued in favor of a presumption in his favor regarding all factual issues.[3] Even setting aside respondent's own interpretation, the Court likewise

---

[3] Petitioner argued to the Court that "at every point where the evidence was equivocal, the Special Master, contrary to the law as discussed above, found against petitioner, rather than in favor of Petitioner.

10

rejected petitioner's argument as reflecting an impermissibly lowered burden of proof, observing that

> Petitioner further asserts that the Special Master's analysis of the record was flawed because, under the vaccine compensation system, "close calls regarding causation are resolved in favor of injured claimants." Petitioner claims this rule should apply to facts, as well as causation. It is unlikely, however, that as part of the overall statutory National Childhood Vaccine Injury Act, failure to document vaccination is permissible to allow a petitioner to receive compensation. Whether or not a petitioner had received a vaccination is a statutory requirement under the Act. Respondent correctly states in its response to petitioner's motion for review that preponderant proof is the requirement for proving the establishment of a critical fact necessary to be eligible for compensation.

(ECF No. 58, pp. 14-15 (internal citations omitted).)

Of greater concern to the undersigned, petitioner also argued against consideration of the inconsistency of factual representations in his pleadings due to his *pro se* status at the time of filing. (ECF No. 55, p. 16.) His motion for review stated of his initial pleadings that they were filed "when he was a pro se petitioner, residing in prison without access to any of his records, and more significantly, filing to preserve his statute of limitations. Mr. Matthews is not a lawyer, nor is he a particularly sophisticated Petitioner." (*Id*.) Notably, however, although Ms. Gentry formally became counsel of record subsequent to the filing of the petition, the billing records submitted with the instant motion confirm that counsel began work on this case file in October of 2018, five months before the petition was filed. (ECF No. 64-1, p.4.) Moreover, the billing records specifically confirm that counsel was in direct contact with petitioner before any petition was filed and that counsel was specifically consulted with regard to preparing the petition for filing. (*Id*. at 5.) Thus, counsel's billing records reveal in hindsight that petitioner's motion for review was at substantial risk of misleading the Court.

Petitioner bears a burden of proof with respect to demonstrating both the existence of a reasonable basis and the reasonableness of hours expended. Here, petitioner opted not to file any reply after respondent asserted that petitioner's motion for review lacked a reasonable basis. This is especially notable given that respondent specifically challenged petitioner's legal argument as "indefensible." (ECF No. 66, p. 13.) Petitioner has offered no explanation for why his motion for review was reasonably undertaken or why his arguments were within the bounds of *reasonable* advocacy. In fact, petitioner advanced no argument at all in support of his request for attorneys' fees and costs.

---

Mr. Matthews is also not arguing that a Special Master must always take Petitioner's word or rule in favor of Petitioner – but when there is evidence on both sides, as there is here, that the intent of the Program with respect to 'close-calls' directs the Special Master to rule for petitioners." (ECF No. 55, p. 13.)

11

Thus, while petitioner's motion for review did not *per se* lack a reasonable basis, review of the substance of that motion reveals that much of the time spent crafting the motion cannot be considered to be time reasonably spent given the specific arguments advanced. While the errors above may seem more forgivable when originating within student work, the fact that they were ultimately presented to the court calls into question Ms. Gentry's supervisory review. In light of the specific student/supervising attorney context, reduction is made as follows: None of the 5.5 hours billed by Ms. Gentry as supervising attorney are reimbursed and the student attorney hours are reduced by 50%. This results in a reduction of $3,739.50.

### IV.     Conclusion

For the reasons set forth above, petitioner established a reasonable basis for the initial filing of his petition as required for an award for attorneys' fees and costs. Accordingly, an award for attorneys' fees and costs is **GRANTED.** However, attorneys' fees and costs are awarded in the reduced amount of $33,556.18 for all the reasons discussed above.

**Accordingly, I award a total of $33,556.18 as a lump sum in the form of a check payable to petitioner and his counsel, Renee Gentry, Esq.**

The clerk of the court shall enter judgment in accordance herewith.[4]

**IT IS SO ORDERED.**

s/Daniel T. Horner
Daniel T. Horner
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.